**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JOE GUERRA and MARTHA GUERRA, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-06-1444 |
| | § | |
| | § | |
| LEHMAN COMMERCIAL PAPER, INC. | § | |

**MEMORANDUM AND OPINION**

This bankruptcy appeal raises the issue of judicial estoppel based on the debtors'
failure to include contingent claims in their bankruptcy schedules.  The bankruptcy court
granted summary judgment in the debtors' adversary proceeding against Lehman
Commercial Paper ("Lehman") on the ground that the debtors had not disclosed the claim
in the schedules filed in their Chapter 13 bankruptcy proceeding.  The debtors appealed.
Based on a careful review of the pleadings, the briefs, the record, and the applicable law, this
court affirms the decision of the bankruptcy court and enters final judgment.  The reasons are
set out below.

I.      **Background**

The facts material to this appeal are undisputed.  In September 1998, Joe and Martha
Guerra applied for a home loan with Fidelity Funding Mortgage Corp.  The loan was closed
and funded in November 1998.  The loan was later assigned to Lehman, which hired Select
Portfolio Servicing, Inc. ("Select") to service the loan.

On May 10, 2004, four months before filing for bankruptcy, the Guerras were referred by their attorney, Ira Joffe, to another attorney, Richard Tomlinson.  Tomlinson reviewed the 1998 loan transaction and advised the Guerras that they had a contingent legal claim against Lehman for violations of the Home Ownership and Equity Protection Act (HOEPA) amendments to the Truth-in-Lending Act (TILA) and violations of TILA, 15 U.S.C. § 1601 *et seq.*[1]  In her deposition, Martha Guerra testified that Tomlinson had said that it appeared that a federal law applied to this loan and that this law had been violated.  He also stated, however, that the statute of limitations for this claim had already run and that the Guerras could raise this claim if they filed for bankruptcy and the lender filed a proof of claim (Docket Entry No. 3-2, Martha Guerra Depo. at 36-38 ).

On September 1, 2004, the Guerras filed a voluntary Chapter 13 bankruptcy petition. They did not make postpetition payments on the mortgage loan.  On September 20, 2004, the Guerras filed their schedules in the bankruptcy proceeding.  They did not include potential claims against Fidelity, Lehman, or other entity for statutory violations relating to the mortgage loan.  On December 8, 2004, Select filed a proof of claim on Lehman's behalf in the Guerras' Chapter 13 bankruptcy proceeding.  On December 17, 2004, Select filed a motion seeking relief from the automatic stay.  On December 21, 2004, the bankruptcy court entered an order confirming the Guerras' Chapter 13 plan.  Two days later, on December 23,

---

[1]  The Guerras alleged that the loan was a high-fee or high-rate loan and that they did not receive the HOEPA-required preclosing notice of the costs involved.  15 U.S.C. § 1602(f); Docket Entry No. 3 at 120. The Guerras claim that Fidelity's preclosing disclosures understated the actual monthly payment and the APR.  (Docket Entry No. 3 at 132).  The Guerras claimed $2,000 in statutory penalty and other damages.

2004, the Guerras filed a response to the motion to lift the stay.  They had not disclosed any claims against Fidelity or its successors before filing the response to the motion to lift the stay or in the response.

On January 5, 2005, the Guerras filed a motion to modify the confirmed Chapter 13. The modification was based on a settlement with Select that allowed the Guerras to cure their postpetition arrearage on the mortgage loan payments.  The Guerras did not disclose any claims against Fidelity, Lehman, or Select.  On January 10, 2005, the bankruptcy court entered an Agreed Order Conditioning Automatic Stay.  The Order modified the Plan to include the postpetition arrearages as well as Select's attorneys' fees and costs.  The effect was to allow the Guerras to remain in their home and avoid foreclosure if they made the payments required under the modified Plan.

In a letter dated February 17, 2005, Tomlinson advised the Guerras as follows:

> You may recall that Ira Joffe referred you to me regarding a potential claim against Fidelity Funding Mortgage Corporation. I advised you that there is a potential violation of the Home Ownership and Equity Protection Act (HOEPA) by Fidelity which is worth pursuing, but only if you filed for bankruptcy and Fidelity or its successor filed a proof of claim.  I recently confirmed that Fidelity's successor has filed a proof of claim in your bankruptcy, so you are now free to raise your HOEPA claim.  I spoke with Mr. Joffe earlier this week, and he agrees that it is worth pursuing.

(Docket Entry No. 3, Ex. 3, B-1).

3

On March 1, 2005, the Guerras filed an application to employ special counsel.  In this application, the Guerras alleged that they held potential claims against Fidelity or its successors for violations of TILA and HOEPA relating to the 1998 loan.  The Guerras did not serve Select with a copy at the address provided in the January 26, 2005 Service Request. On March 17, 2005, with no response filed, the bankruptcy court granted the application. On April 11, 2005, the Guerras filed the adversary proceeding against Select, asserting the statutory claims.  After the original complaint was filed, Select notified the Guerras that they had sued an incorrect party—the loan servicer—under TILA.  The Guerras amended their complaint to name Lehman as the defendant on June 28, 2005.

In October 2005, after Lehman had notified the Guerras that it would assert judicial estoppel as a defense, the Guerras amended their schedules to include a "contingent claim against Select Portfolio Services, Inc." (Docket Entry No. 8 at 5, n.14).  On January 5, 2006, Lehman moved for summary judgment in the adversary proceeding.  On January 27, 2006, the Guerras objected to the proof of claim that Select had filed on December 8, 2004 and amended on January 26, 2005 in the Chapter 13 case.  The Guerras asserted that the claim should be reduced based on their anticipated recovery in the adversary proceeding.  The claim objection was consolidated into the adversary proceeding.

After the parties conducted discovery, including depositions of the Guerras and a representative of Lehman, the bankruptcy court ruled on April 11, 2006.  In its order, the court held that judicial estoppel barred the Guerras' TILA and HOEPA claims because the Guerras had failed to disclose these claims in their Chapter 13 schedules.  The bankruptcy

4

court found that the failure to disclose was not inadvertent because the Guerras knew of the undisclosed claims before filing for bankruptcy. The court concluded that judicial estoppel applied and granted Lehman's motion for summary judgment. The Guerras timely appealed.

## II.     The Standard of Review

In reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir.1992). Legal conclusions are reviewed de novo. *Id.; In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir.1993). The bankruptcy court's summary judgment is reviewed *de novo*, using the same standard as the bankruptcy court. *In re CPDC, Inc.*, 337 F.3d 436, 440–41 (5th Cir. 2003).

## III.    Judicial Estoppel

### A.     The Recent Case Law on Judicial Estoppel

"Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estoped from assuming an inconsistent position.'" *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)), *cert. denied*, 528 U.S. 1117 (2000). The Fifth Circuit has recently defined when judicial estoppel applies:

> A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently. Judicial estoppel is particularly appropriate where, as here, a party fails to disclose

> an asset to a bankruptcy court, but then pursues a claim in a
> separate tribunal based on that undisclosed asset

*Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598,600 (5th Cir. 2005) (citing *In re Coastal Plains*, 179 F.3d at 206–07).

In *Jethroe*, the appellate court affirmed the bankruptcy court's application of judicial estoppel against an individual who had failed to disclose her employment discrimination complaint during her chapter 13 bankruptcy case.  The appellate court emphasized that a debtor's obligation "to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one" and affirmed the lower court's conclusion that the failure to disclose the claim was inconsistent with the debtor's assertion of that claim; that when confirming the plan the bankruptcy court had relied on the debtor's disclosed assets and liabilities; and that the failure was not inadvertent, despite the debtor's argument that she relied on her bankruptcy counsel's advice in preparing her bankruptcy filings.  412 F.3d at 601.  The court noted that under Fifth Circuit precedent, the "'controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions. . . .[a claimant's] lack of awareness of [a] statutory disclosure duty for its [legal claims] is not relevant.'"  *Id.* at 601 n.4 (quoting *In re Coastal Plains*, 179 F.3d at 212).

 "[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims."  *In re Coastal Plains*, 179 F.3d at 207–08.  As the Fifth Circuit explained:

> The rationale for . . . decisions [invoking judicial estoppel to
> prevent a party who failed to disclose a claim in bankruptcy

proceedings from asserting that claim after emerging from bankruptcy] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Id.* (emphasis omitted).

Most courts have identified at least two limits on the application of the doctrine: (1) it may be applied only when the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position. Many courts, including the Fifth Circuit, have imposed the additional requirement that the party to be estopped must have acted intentionally, not inadvertently. *In re Coastal Plains*, 179 F.3d at 205-06; *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004) (noting two limitations on judicial estoppel identified in Fifth Circuit courts). A debtor's failure to satisfy his statutory disclosure duty is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive to conceal the claims. 179 F.3d at 210; *see also New Hampshire v. Maine*, 532 U.S. 742 (2001). The Fifth Circuit noted in *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391 (5th Cir. 2003), a nonbankruptcy case, an additional factor considered by the Supreme Court:

> In this Circuit, two bases for judicial estoppel must be satisfied before a party can be estopped. First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position. *Id.* In *New Hampshire*, the Supreme Court outlined three non-exclusive factors that typically inform the decision whether to apply the doctrine in a particular case. 532 U.S. at 750, 121 S.Ct. 1808, 149 L.Ed.2d 968. In addition to the two factors primarily relied on in this Circuit and already discussed, the Supreme Court articulated a third, whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id*. at 751, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968.

*Id*. at 396, 399. The Supreme Court made has summarized the factors for a court to consider in determining whether judicial estoppel applies:

> Courts have observed that [t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, . . .Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint.

*New Hampshire v. Maine*, 532 U.S. at 750-51 (citations omitted).

Judicial estoppel is most often applied when a former debtor attempts to prosecute claims previously undisclosed in his bankruptcy proceedings. "The rationale for . . . decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the

8

*integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*."  *In re Coastal Plains,* 179 F.3d at 208, quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996) (emphasis added by *Coastal Plains*); *see generally* 18B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 4477 (2d ed. 2002); Benjamin J. Vernia, *Judicial Estoppel of Subsequent Action Based on Statements, Positions, or Omissions as to Claim or Interest in Bankruptcy Proceeding*, 85 A.L.R.5th 353 (2001).

B.    **Analysis**

The Guerras argue that the bankruptcy court erred in applying judicial estoppel because it did not explicitly conclude that the Guerras had a motive to conceal their claims; that Lehman did not produce evidence that the Guerras had a motive to conceal their statutory claims arising from the 1998 loan closing; and that a genuine issue of fact exists as to whether there was a motive to conceal the claims.  (Docket Entry No. 10).  The Guerras also argue that judicial estoppel is not appropriately applied because they did not gain an unfair advantage by the failure to disclose because Select learned of the claims  when it still had an opportunity to revoke the Plan.

The Guerras do not dispute that their failure to disclose the statutory claims in the bankruptcy proceeding was inconsistent with their later assertion of the claims in the adversary proceeding, the first element of judicial estoppel.  Nor do the Guerras appear to dispute that the bankruptcy court relied on their failure to disclose when it confirmed the Plan on December 21, 2004, the second element of judicial estoppel.  As the court noted in *In re*

*Coastal Plains*, 179 F.3d at 213, quoting *Payless Wholesale Distributors, Inc. v. Culver Inc.*,

989 F.2d 570 (1993):

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in [debtor's] present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. [The debtor], having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis.

989 F.2d at 571; *see also, Heckler v. Product Development Corporation*, 2002 WL 824091

(N.D. Tex. 2002) (discharge from bankruptcy is a motive for concealing claims); *Casey v.

Peco Foods, Inc.*, 297 B.R. 73 (S.D. Miss.2003) (the bankruptcy court relied on the debtor's

disclosure statements when approving her no-asset discharge).

     The Guerras do argue that they lacked a duty to disclose.  The facts, however, are

undisputed that the Guerras knew of the statutory claims months before they filed their

bankruptcy proceeding.  The evidence shows that the Guerras were told in May 2004 that

they had potential claims against Fidelity and its successors.  The Guerras were told that

claims was barred by the statute of limitations, but that they could assets it in bankruptcy

when the lender filed a proof of claim.  "Judicial estoppel will be imposed when the debtor

has knowledge of enough facts to know that a potential cause of action exists during the

pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to

identify the cause of action as a contingent asset." *Hamilton v. State Farm Fire & Cas. Co.*,

10

270 F.3d 778, 784 (9th Cir. 2001) (affirming the application of judicial estoppel to a plaintiff who had failed to list claims against an insurer on his bankruptcy schedules, then sued the insurer on the same claims); *see also Coastal Plains,* 179 F.3d at 208 (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)) ("[I]f the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed."). The Guerras had a duty to disclose their statutory claims against Fidelity and its successors in the bankruptcy schedules.

The issue in this case is whether the Guerras' failure to disclose was inadvertent. The first prong of inadvertence looks to the debtors' knowledge of the claims. The Guerras do not dispute that they knew of the facts underlying the TILA and HOEPA claims and knew that they had contingent claims against Fidelity or its successors well before the bankruptcy petition was filed. The evidence is undisputed that they learned of the claims in May 2004, filed for bankruptcy in September 2004, obtained Plan confirmation in December 2004, and entered into a settlement with Select in January 2005 to avoid a lifting of the stay and foreclosure. The Guerras did not disclose the claims until they filed a request for special counsel on March 1, 2005, did not file the adversary complaint asserting the claims until April 2005, and did not amend their schedules to include the claims until October 2005. The evidence clearly shows that the Guerras had knowledge of the claims long before disclosing them.

The Guerras assert that they were told that the claims were contingent on their filing bankruptcy and the lender filing a proof of claim. That occurred in December 2004, with an amended claim filed in January 2005. Yet the Guerras did not file their motion to appoint special counsel until March 2005 and did not file their adversary complaint asserting the claims until April 2005. The Guerras assert advice of counsel, but the courts have refused to recognize that a debtor's reliance on advice of counsel raises a fact issue as to inadvertence. The "'controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions. . . .[a claimant's] lack of awareness of [a] statutory disclosure duty for its [legal claims] is not relevant.'" *Jethroe*, 412 F.3d at 601 n.4 (quoting *In re Coastal Plains*, 179 F.3d at 212). The first prong of inadvertence, the third element of judicial estoppel, is established.

The Guerras also dispute the second prong of the third element, the motive to conceal the claims. The Guerras argue that the bankruptcy court erred in failing to make a finding on the motive to conceal. The bankruptcy court clearly set out this circuit's standard for inadvertence, including the motive to conceal. The bankruptcy court concluded that the debtors' "failure to disclose the cause of action was not inadvertent" and granted Lehman's summary judgment motion on the basis of judicial estoppel. The bankruptcy court did conclude that the Guerras knew of the claims and had not shown the absence of a motive to conceal. "To establish that her failure to disclose was inadvertent, [a debtor] may prove either that she did not know of the inconsistent position or that she had no motive to conceal it from the court." *Jethroe*, 412 F.3d at 600–601. The bankruptcy court granted summary

12

judgment on the basis that the debtors had failed to show that their failure to disclose was inadvertent.  If the record establishes that, as a matter of law, there are no disputed facts material to deciding whether the Guerras had a motive to conceal, there is no necessity to reverse and remand.

The summary judgment evidence as to inadvertence is very similar to that in other cases in which judicial estoppel has applied.  The courts frequently observe that a debtor who obtains a confirmation based on schedules that do not disclose contingent claims that are subsequently asserted have a motive to conceal those claims from the bankruptcy court.  *In re Coastal Plains*, 179 F.3d at 212–13; *Heckler*, 2002 WL 824091.  In this case, there is an additional motive similar to that present in *In re Coastal Plains*.  In that case, the court concluded that a debtor had a motive to conceal its claim because if creditors knew of the claims, they may have opposed lifting the foreclosure stay.  179 F.3d at 212.  In this case, Lehman similarly argues that had Select known that the Guerras intended to assert the statutory violations, it may not have agreed to the settlement that allowed the Guerras to cure their postpetition defaults and avoid foreclosure without obtaining a release of those claims. (Docket Entry No. 8, Ex. A at 11–12).

In *Jethroe*, the court concluded that the debtor "had an incentive to conceal her claims from creditors."  412 F.3d at 601.  The Fifth Circuit cited to *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir.2002).  In that case, "the court inferred intentionality from the facts that the debtor had 'filed and pursued his employment discrimination claims during the pendency of his chapter 13 case but never amended his financial statement to include the

13

lawsuit' and then subsequently converted to a chapter 7 filing, also without disclosing the claim. This reasoning is sound."  412 F.3d at 601.  This is consistent with *In re Coastal Plains*, in which the court determined that a debtor had a motive to conceal despite testimony that the motive to conceal was not why the debtor omitted the claim.  179 F.3d at 210-13 (judicial estoppel does not necessarily require "bad faith" or deceptive intent; the inadvertence of the nondisclosure prong is satisfied when a debtor unreasonably disregards her express, affirmative disclosure duties); *Wakefield v. SWS Securities, Inc. (In re Wakefield)*, 293 B.R. 372 (N.D. Tex.2003) (assessment of motive not to disclose must include subjective considerations).

This case is distinguishable from the cases the Guerras cite in which courts have overlooked a debtor's failure to disclose a claim.  The Guerras cite to *In re Waddell*, 314 B.R. 328 (S.D. Miss. 2004).  In that case the court found that "there is some question as to whether the position taken by the debtor in her bankruptcy proceeding was inconsistent with the lawsuit" because the debtor made repeated efforts to correct the schedules and did not attempt to conceal a "widely publicized" lawsuit.  *Id.* at 337.  In this case, the Guerras' claims were not publicized and they made no effort to disclose their claims before their Chapter 13 Plan was confirmed.  This case is also distinguishable from the other case the Guerras cite, *Smith v. Rosenthal Collins Group, L.L.C.*, 2005 U.S. Dist. LEXIS 33019 (W.D. Tenn. Sept. 10, 2005).  In that case, the court found that the debtor failed to disclose a claim after consulting two attorneys, one who told the debtor he had no claim, and one who told him that he may have a claim under the ADA.  *Id.* at *11.  This case shows no such

14

ambiguity.  The Guerras were aware of their contingent claims months before filing for bankruptcy.

The Guerras finally argue that judicial estoppel should not apply because they did not gain any unfair advantage through their delay in disclosing their HOEPA and TILA claims. They cite *Ajaka v. BrooksAmerica Mortgage Corp.*, 453 F.3d 1339 (11th Cir. 2006).  That case also involved a debtor's failure to disclose TILA claims during a bankruptcy proceeding.  In that case, the court found that the debtor had given the creditors notice of the TILA claim more than six weeks before the expiration of the 180-day period for objecting to confirmation of the Chapter 13 reorganization plan.  During that period, the creditors could have sought revocation of the confirmation of the debtor's Chapter 13 reorganization plan under 11 U.S.C. § 1330(a) and conversion of the bankruptcy to Chapter 7 under 11 U.S.C. § 1307(c), challenging the debtor's failure to previously amend his schedules within the context of the ongoing bankruptcy proceeding.  The court also noted significant evidence that the debtor did not intend to conceal his TILA claim from his creditors, pointing out that bankruptcy attorney knew of the need to amend the schedules to reflect the TILA claims before any defendant in the case raised the prospect of judicial estoppel, but failed to do so without explanation.  The court found that these facts taken together were sufficient to conclude that there was a question of material fact as to whether the debtor had the "motivation and intent to manipulate the judicial system."  *Id.* at 1345.

The facts and the law in the present case are distinguishable from *Ajaka*.  In that case, the creditors knew of the claims six weeks before the period for seeking to revoke the

confirmation expired. In the present case, the evidence does not support a finding that Lehman knew of the claims an extended period before the expiration of the 180-day period for objecting to confirmation. The Guerras assert that they gave notice of the claims by filing a motion for leave to appoint a special counsel on March 1, 2005, 16 days before the expiration of the 180-period. The record shows that the motion was not served on Select at the address that had been provided. Based on this evidence, the first notice of the claims Select received was the April 1, 2005 filing of the adversary proceeding, after the 180-day period for seeking revocation of the Plan had expired. Nor is there evidence that the debtor made efforts to give notice of the claims earlier, as the court found in *Ajaka*. Finally, the Eleventh Circuit standard for showing inadvertence appears less demanding than the standard applied in the Fifth Circuit's recent opinions in *Jethroe*, 412 F.3d at 600–01, and *In re Coastal Plains*, 179 F.3d at 210 ("[A creditor's] *knowledge of the claims*, or its non-reliance on the nondisclosure, even if supported by the record, are irrelevant. . . .[U]nlike the well-known reliance element for other forms of estoppel, such as equitable estoppel, detrimental reliance by the party seeking *judicial estoppel* is *not* required. Again, the purpose of *judicial estoppel* is not to protect the litigants; it is to protect the integrity of the judicial system.") (emphasis in original).

The bankruptcy court's conclusion that the elements of judicial estoppel were satisfied is amply supported by the record evidence. The appeal is dismissed.

## IV.   Conclusion

The bankruptcy court's grant of summary judgment to Lehman is affirmed.  This appeal is dismissed by separate order.

SIGNED on February 5, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge